**SUNFIRE COAL COMPANY, a corporation, and Ashlo Coal Company, a corporation, Plaintiffs-Appellees,**

v.

**UNITED MINE WORKERS OF AMERICA, Defendant-Appellant.**

No. 14832.

United States Court of Appeals
Sixth Circuit.

Feb. 16, 1963.

M. E. Boiarsky, Charleston, W. Va. and Harrison Combs; Washington, D. C. (H. B. Noble, Hazard, Ky., on brief), for appellant.

Logan E. Patterson, Pineville, Ky., and James S. Greene, Jr., Harlan, Ky., for appellees.

Before WEICK and O'SULLIVAN, Circuit Judges, and PECK, District Judge.

PECK, District Judge.

On April 25, 1959, a coal tipple at Combs, Perry County, Kentucky, owned by one of the plaintiff corporations and operated by the other, burned. Thereafter, plaintiffs instituted this action to recover damages allegedly occasioned by such burning, and after jury trial and verdict judgment was entered in favor of the plaintiff Sunfire Coal Company, the owner and lessor of the premises in question, in the amount of $250,000 against the defendant, and in favor of the Ashlo Coal Company, the lessee and operator, in the sum of $14,000, also against this defendant. From that judgment, and from the trial court's order denying its motion for a new trial, defendant has perfected this appeal.

The burning of the coal tipple climaxed a period of intense labor unrest which had endured nearly a month and a half. The record discloses that during that time contract negotiations were in progress between District 30, United Mine Workers of America, and at least some of 176 coal operators in the vicinity to whom sixty-day notices terminating a prior agreement had been sent on January 7, 1959; plaintiffs, not having been parties to the prior agreement, did not receive such a notice, which also contained an offer to negotiate a new contract. Picketing at the subject premises (hereinafter referred to as the Ashlo tipple) commenced March 16th and continued until the date of the fire, and the unrest referred to included the operation of a motorcade throughout the area for three days; this motorcade was varyingly described as containing from seventy-five to three hundred cars at different times, and its ostensible purpose was to determine which of the mines in the area were operating. The Kentucky State Police were in constant contact with the situation, arrested one individual for attempting to incite a riot, and in general maintained a vigilant surveillance of the area. Most of the 57 witnesses who testified contributed bits of testimony of tacks strewn on the road, of truck tailgates opened to let coal fall to the highway, of boisterous and unruly conduct, of spasmodic shooting and dynamiting, of bullets shot into a coal truck, of knife-slashed tires, of dirty name calling and personal threats, all combining to create a picture of general disturbance and disquiet throughout the community.

On April 24, 1959, there were a dozen state troopers at Combs and one of them testified that on that day the pickets on the road near the Ashlo tipple "continued to come in, there were so many of them, they were out of hand. * * * they were just falling in there in carloads." In the course of the day, an attempt by defendant's representatives to get the coal company to execute a contract was unsuccessful.

Shortly after 6 o'clock a. m. the following day the Ashlo tipple burned. During the night, water tanks on the premises had been drained, and the destruction was extensive. Estimates of the number of pickets at the scene the preceding day ran as high as one thousand, and the disturbance continued throughout the night, the testimony indicating that there was considerable shooting toward the tipple, some of which came from the direction of the pickets. A state trooper who saw the fire start testified that a man ran from the tipple less than fifteen minutes earlier, and tracking by bloodhounds disclosed a place at which one or more persons had been sitting, from which such persons were tracked some miles to a point where they apparently got into an automobile. The record discloses no positive evidence of the origin or of the originators of the fire, but there is circumstantial evidence which the plaintiffs claim support their contention that it was deliberately set by or at the instigation of the defendant.

The Complaint herein was filed under the provisions of Section 303 of the Labor Management Relations Act of 1947, as amended by Public Law 86–257, 1959, and defendant first contends that no damage to plaintiffs' property and business within the meaning of that Section has been alleged or proven. Since permissive primary picketing at the Ashlo tipple would have been legitimate, it becomes necessary to examine the character of this activity.

■ The evidence was that neither Sunfire nor Ashlo produced coal, but that the latter bought the coal at the tipple from numerous independent producers who caused it to be brought there by truck. To the extent that such producers had not signed agreements with it, defendant was essentially engaged in negotiation or conflict with them. Faced with the complexity of numerous picketings at separated and inaccessible mine locations, defendant chose the simpler course of closing the outlet provided for the numerous producers by Ashlo's operation of Sunfire's tipple. In reaching this conclusion we specifically reject defendant's contention that Ashlo employees were themselves picketing for higher wages. The pattern of defendant's strategy in attempting to obtain contracts with the 176 producers by concentrating efforts on the smaller number of outlet-operators is further indicated by defendant's attempt to obtain contracts with the latter which would permit them to purchase coal only from producers under contract with defendant. It is our conclusion that under the circumstances here present the picketing at the Ashlo tipple was not merely permissive primary picketing, but was a secondary boycott within the meaning of Section 303 of the Labor Management Relations Act. See Gilchrist v. United Mine Workers of America, 290 F.2d 36 (6 C.A., 1961), cert. den. 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76, and Flame Coal Company v. United Mine Workers of America, 303 F.2d 39 (6 C.A., 1962), cert. den. 371 U.S. 891, 83 S.Ct. 186, 9 L.Ed.2d 125.

■ Defendant has undertaken a detailed review of the evidence in support of its argument that the evidence does not support the jury's verdict as to its responsibility for the burning of the tipple. Without here reviewing the evidence except to the extent that it is above summarized, suffice it to say that no justification appears for disturbing the judgment of the trial court or its order denying defendant's motion for a new trial on numerous grounds, including this one.

■■ The defendant further assigns as reversible error the action of the court in admitting, over its objection, evidence in various categories. Under authority of the two cases above cited and United Mine Workers of America v. Osborne Mining Company, 279 F.2d 716 (6 C.A., 1960), cert. den. 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 103, evidence concerning dynamiting at plaintiffs' premises, with respect to incidents at mines and properties other than those of the plaintiffs and with reference to property damage sustained by other coal operators was properly received. The court, similarly, properly overruled an objection to the testimony of a state trooper to the effect that he stopped a car containing two union members and a large amount of ammunition, since the jury had a right to consider this evidence in determining whether there was a concert of action between the two individuals. Whether or not the defendant and United Mine Workers of America Welfare and Retirement Fund are separate entities, evidence that the latter had paid medical bills charged to an individual was properly received on the issue of his relationship with the defendant.

■ While we feel that the charge of the trial court to the jury was without prejudicial error, on the present record it is unnecessary to pass upon that question, or to consider the propriety of the trial court's rulings on interrogatory 1 and its refusal to give certain instructions requested by defendant. Rule 51, F.R.Civ.P., precludes a party from as-

signing as error the giving or failure to give an instruction to the jury unless he has objected thereto before the jury retired to consider its verdict, "stating distinctly the matter to which he objects *and the grounds of his objection.*" (Emphasis supplied.) Not having stated such grounds, defendant may not now be heard to complain. Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943); McPherson v. Hoffman, 275 F.2d 466 (6 C.A., 1960). In a case where one entity acted merely as sales agent for another, it was held that the principal was without a federally recognized cause of action in United Mine Workers of America v. Osborne Mining Company, supra. Defendant relies on that case in arguing that as Ashlo's principal agent Sunfire cannot be awarded judgment. This argument is completely untenable because no such agency relationship is disclosed by the record.

The remainder of the defendant's contentions, all of which have been resolved adversely to it, do not here require discussion, and it follows that the judgment of the district court is affirmed.