335 F.2d 958
 SUNFIRE COAL COMPANY and Ashlo Coal Company, Plaintiffs-Appellees,
v.
UNITED MINE WORKERS OF AMERICA, Defendant-Appellant.
R. P. PRICE, C. H. Kelly and Follace Fields, Partners, d/b/a Elkhorn Coal Company, Plaintiffs-Appellees,
v.
UNITED MINE WORKERS OF AMERICA, Defendant-Appellant.
 No. 15502.
 No. 15503.
 United States Court of Appeals Sixth Circuit.
 August 20, 1964.
 
 M. E. Boiarsky, Charleston, W. Va., and Harrison Combs, Washington, D. C., for appellant.
 James S. Greene, Jr., Harlan, Ky., (Logan E. Patterson, Pineville, Ky., on the brief), for appellees.
 Before WEICK, Chief Judge, and O'SULLIVAN and EDWARDS, Circuit Judges.
 O'SULLIVAN, Circuit Judge.
 
 
 1
 The above appeals, Nos. 15,502 and 15,503, involve identical questions, viz.: the propriety of the denial of motions for new trials, both made on the ground of newly discovered evidence. We will dispose of them in one opinion. On June 7, 1961, a final judgment, following a jury verdict, was entered in the United States District Court for the Eastern District of Kentucky in favor of Sunfire Coal Company and Ashlo Coal Company, and against appellant, United Mine Workers of America, in the total sum of $264,000.00. Such judgment was affirmed by this Court on February 16, 1963. Sunfire Coal Company v. United Mine Workers, 313 F.2d 108 (CA 6, 1963). On October 10, 1961, a final judgment, following a jury verdict, was entered in the same District Court in favor of R. P. Price, C. H. Kelly and Follace Fields, partners, d/b/a Elkhorn Coal Company, and against the appellant, United Mine Workers of America, in the total sum of $250,000.00. An appeal from the latter judgment is pending in this court.[1]
 
 
 2
 Each of the aforesaid judgments included awards for compensatory and punitive damages. The actions arose out of alleged depredations committed by members of the defendant United Mine Workers upon the properties and business of the respective plaintiffs during the Mine Workers' massive campaign to obtain contracts from various coal operators in southeastern Kentucky and northeastern Tennessee. This activity occurred during 1959. The recitations of the facts in our decisions of Gilchrist v. United Mine Workers of America, 290 F.2d 36 (CA 6, 1960); Flame Coal Company v. United Mine Workers of America, 303 F.2d 39 (CA 6, 1962); United Mine Workers of America v. Osborne Mining Co., 279 F.2d 716 (CA 6, 1960); and Sunfire Coal Company v. United Mine Workers of America, 313 F.2d 108 (CA 6, 1963), provide a fair description of the character and extent of the activity, violence and destruction that was claimed to characterize the organization methods of the United Mine Workers.
 
 
 3
 In the Price and Sunfire cases, now before us on appeal from denial of the motions for new trial, evidence was admitted of shootings, burning, dynamiting and other violence without specifically identifying the perpetrators as being members of the United Mine Workers. Violence at the premises of operators other than the plaintiffs in the particular cases was also admitted as evidence of the grand scale of the entire operation. This was true also in the other cases which have been before us and the reasons for holding such evidence admissible are set forth in the cases as reported.
 
 
 4
 On April 22, 1963, in the Price case and on May 16, 1963, in the Sunfire case, defendant United Mine Workers filed motions each entitled, "Motion to Vacate Final Judgment and Order and Award Defendant United Mine Workers of America a New Trial Because of Newly Discovered Evidence." (Emphasis supplied.) In Price, the motion was filed about five months after the expiration of one year from the entry of final judgment and in Sunfire, about one year and eleven months after final judgment.
 
 
 5
 These motions were heard together before District Judges H. Church Ford and Mac Swinford, the trial judges in the respective cases. The motions were denied and in a joint memorandum the judges gave as the reason for such denial the provision of Rule 60(b) (2), F.R.Civ.P., which requires that motions for new trial on the ground of newly discovered evidence must be filed "not more than one year after the judgment." (Emphasis supplied.)
 
 
 6
 Defendant asserts that the newly discovered evidence would consist of testimony that certain of the acts of violence, arson and destruction were actually committed by persons in no way connected with the United Mine Workers; that they were committed by police officers, mine operators and others. In support of these motions defendant attached an affidavit of an attorney, H. B. Noble,[2] who deposed that on August 10, 1962, one Ira Kilburn, a member of the police force of Hazard, Kentucky, told Noble that he had information as to the identity of persons who had committed numerous crimes connected with the violence at the Kentucky mines. Kilburn's information was composed into an affidavit, sworn to before attorney Noble. Except for confession of his own participation in some of the events, all of which were criminal activities, it is not clear whether Ira Kilburn had any personal knowledge of the events which he detailed in his affidavit.[3] Noble's affidavit stated that Ira Kilburn's information was given to him, "on a professional basis, as attorney and client," and was to be kept secret by him because Kilburn had said that his life had been threatened and that he, Kilburn, "wanted the affidavit made in the event that anything should happen to him that the affidavit could be presented to the grand jury for its consideration."
 
 
 7
 The motions for new trial alleged that Kilburn's affidavit was kept secret until on or about March 22, 1963, when it came to light at a hearing of Hazard city officials while investigating charges filed against the deponent Ira Kilburn as a member of the Hazard City Police Force. The record does not disclose how the affidavit went from its confidential and professional custody in the hands of attorney Noble to the Board of Commissioners of the City of Hazard. A further affidavit in support of the motion for new trial set forth that none of the people identified in the Kilburn affidavit were agents, officers or members of the United Mine Workers, but that "Paul Tayloe and Dick Johnson were engaged in the mining business; that R. D. Cisco, George Smith and Tommy Kilburn were members of the Hazard police force during the year of 1959; that C. C. Begley was a member of the Louisville and Nashville Railroad Company's police force and that Ira Kilburn was a member of the Hazard police force during the year of 1959."
 
 
 8
 It should be observed that Ira Kilburn did not make his affidavit for use as support for defendant's motions, nor is it claimed that he would or could give testimony at a new trial of the "information" contained in his affidavit. The defendant's position is that if given a new trial, "United Mine Workers intends to subpoena the said Ira Kilburn as a witness in a new trial for the purpose of examining him concerning the statements contained in the said `Kilburn affidavit.'"
 
 
 9
 It should be further noted that there is no claim made that any of the plaintiffs in Sunfire and Price, or any of their agents, or employees, knew of or in any way participated in bringing about the spectacular behavior which Kilburn described. The only occurrence referred to in Kilburn's affidavit which became part of the testimony in either Sunfire or Price related to the burning of the coal tipple of Marian Ritchie. The latter testified that his tipples at Sassafras, Viper and Ulvah, Kentucky, were burned in July and August, 1959. He was unable to directly identify the arsonists. No fraud upon the court by the plaintiffs is charged or intimated. Notwithstanding the voluminous evidence of the 1959 reign of terror in the Kentucky coal fields, and defendant's awareness that it was charged with responsibility therefor, the motions for new trial are silent as to any efforts made or diligence employed before, during or after the trials to find evidence, if any there was, that others than those connected with defendant were the perpetrators of the violence visited upon the mine owners. Kilburn's secret was kept by one of the defendant's attorneys, who averred that he was commanded to do so by Kentucky's Revised Statutes, § 421.210(4).[4] Not until the fortuitous disclosures of the investigation into the affairs of the Hazard Police Department did defendant claim that evidence was available that others than their own people were responsible for what happened in 1959.
 
 
 10
 Relying on Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, defendant asserts that its motion for new trial should not be viewed as subject to the limitations of Rule 60(b) (2) which requires that motions for new trial on the ground of newly discovered evidence be presented within one year after judgment, but rather as coming within subdivision (b) (6) of that rule. That subsection relates to motions bottomed upon "any other reason justifying relief from the operation of the judgment." The latter ground is not subject to the limitation applicable to motions made under Rule 60(b) (2) — "newly discovered evidence" — nor to any specific period of limitation.
 
 
 11
 We do not read Klapprott as supporting defendant's position here. Klapprott there sought to vacate a default judgment cancelling his certificate of naturalization. He was given notice of the petition seeking such judgment, but within the time for his answer he was arrested and convicted of crime and was thereafter held in jail for several years. His motion to vacate the default judgment set forth facts which, if true, would prove that his efforts to defend the denaturalization proceedings were wrongfully thwarted by agents of the United States government. The majority opinion found first that the denaturalization judgment was void for failure of the government to prove the allegations of its petition therefor, and second, that the cause of Klapprott's failure to defend the denaturalization proceedings did not constitute "mistake, inadvertence, surprise, or excusable neglect" which, if asserted as ground for relief, would have required his motion to be made within one year after the judgment. Rule 60(b) (1). The court found that Klapprott's motion should be held to be grounded on Rule 60 (b) (6), "any other reason justifying relief from the operation of the judgment." The Supreme Court said, "[a]nd of course, the one year limitation would control if no more than `neglect' was disclosed by the petition," (335 U.S. 613, 69 S.Ct. 389) — emphasizing that the limitation must be applied if a motion is grounded on any one of reasons (1) (2) or (3), which are governed by the one year limitation.
 
 
 12
 The motions here involved state in their captions that they ask for a new trial "because of newly discovered evidence," and in the body of each motion they ask for "a new trial upon newly discovered evidence." If, however, the substance of the motions made them something different than the formal label placed on them, defendant should not be denied relief because of such technicality. But the content of the motions and their supporting affidavits disclose that they are nothing more than what their titles proclaim them to be — motions for a new trial on the ground of "newly discovered evidence." To get relief under subsection (b) (6) they must assert some "other" reason, for such section is limited to "any other reason justifying relief * * *." All that defendant's motions seek is the opportunity to put Kilburn on the stand at a retrial, or to examine him to discover new evidence to be used on a retrial. There is no claim that the Sunfire or the Price judgments are void or that plaintiffs committed any fraud.
 
 
 13
 We emphasize two facts. Nowhere in defendant's motions and supporting affidavits is it asserted that any of plaintiffs' witnesses swore falsely, much less that plaintiffs committed fraud on the trial court by suing for injuries of their own doing or by knowingly using false testimony. Plaintiffs' witnesses gave evidence of circumstances from which the jury in each case could, and did, conclude that defendant's people were responsible for the spectacular violence that characterized the 1959 affair. In Gilchrist, Flame, Osborne and Sunfire, supra, we held that such evidence was sufficient to permit the juries to reach such conclusions.
 
 
 14
 Since the original draft of this opinion was prepared, we have received Judge Edwards' dissent. Therein it is said that "The courts of this land are not without power to deal with allegations like these which really charge fraud upon the court," and the present motion is therein characterized as one "which represents such a fundamental charge of fraud upon the court * * *." (Emphasis supplied.) Because of this language, we have again scrutinized defendant's motions and their supporting affidavits and fail to find therein the basis for such observations. We do not believe that we should gratuitously supply defendant's motions with allegations which counsel quite obviously avoided making. We further observe that even if the allegations of Kilburn's affidavit be accepted as true, they wholly fail to charge that the plaintiffs, or anyone connected with them, conspired with, cooperated with, or in any way participated in the conduct described by Kilburn.
 
 
 15
 However much our curiosity might tempt us to find out something more about Kilburn's interesting affidavit, and however much we might desire to allay our wonder as to what notice police authorities may have taken of it, the law denies us such an excursion. Neither the District Judges nor ourselves are at liberty to do violence to the clear language of Rule 60(b) (2) which forbids entertainment of the motions made after the limitation has run.
 
 
 16
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 Decision of the Price case was deferred pending decision of the United States Supreme Court in another case
 
 
 [2]
 This attorney was an attorney of record for defendant in both the Sunfire and Price cases
 
 
 [3]
 
 "State of Kentucky
 County of Perry Affidavit
 "I, Ira Kilburn, state that I am a citizen and resident of Hazard, Perry County, Kentucky; I further state that I am a member of the Hazard Police Force and that I was such during the year of 1959; I further state that I have had threats made against my life on account of my having knowledge of certain acts which were committed during the strike during the year of 1959, and being in fear of my life, I make the following statement concerning the acts and incidents committed by R. D. Cisco, Chief of Police of Hazard, Kentucky, and George Smith, a member of the police department and other persons.
 "Ritchie's Tipple at Viper, Kentucky was burned by Paul Tayloe, R. D. Cisco and George Smith.
 "Ritchie's Tipple at Sassafras, Kentucky, was burned by Ritchie's guards. The scale house was burned by Paul Tayloe, R. D. Cisco, George Smith and Dick Johnson.
 "The union hall at Blackey, Kentucky, was burned and dynamited by Paul Tayloe, R. D. Cisco.
 "Doctor Begley's cabin at London, Kentucky, was burned by C. C. Begley, George Smith and Tommy Kilburn.
 "Bill Turner's car burned at Sterling Warehouse by Paul Tayloe and R. D. Cisco.
 "Nyn Cornett's car at Brown's Fork dynamited by Tommy Kilburn and the dynamite furnished by Paul Tayloe.
 "Doug Duff's car burned on by-pass by C. C. Begley, Tommy Kilburn, R. D. Cisco.
 "Pokey Gayheart's house burned by C. C. Begley and George Smith.
 "Colored Boy's car at top of town mountain burned by George Smith and Tommy Kilburn.
 "Union Picket's coffee pot shot off fire by George Smith and Paul Tayloe at Cornettsville, Kentucky.
 "Combs Drive-In on Combs Road dynamited by R. D. Cisco, George Smith and Ira Kilburn.
 "Dipsey Doodle Drive Inn shot up by R. D. Cisco, C. C. Begley and Ira Kilburn.
 "Dipsey Doodle dynamited by Tommy Kilburn with dynamite furnished by Paul Tayloe.
 "Baker's car at Combs, Kentucky shot up by R. D. Cisco, George Smith and Ira Kilburn.
 "Pistol belonging to George Dewey Baker was stolen out of Baker's car by R. D. Cisco.
 "A man that I do not remember his name was arrested for drunken driving and his snub nose pistol was stolen out of his car by R. D. Cisco.
 "I am making this statement due to fear for my life and in the event that I should lose my life, I want this statement presented to the Grand Jury for its consideration. George Smith has made threats against my life and I feel that due to the fact that I have knowledge of the foregoing facts which make the jobs of both George Smith and R. D. Cisco uncertain that they might make some attempt against me.
 "I have read the foregoing two pages and they are true and correct.
 "This the 10th day of August, 1962.
 /s/ Ira Kilburn."
 
 
 [4]
 "(4) No attorney shall testify concerning a communication made to him, in his professional character, by his client, or his advice thereon, without the client's consent; * * *."
 
 
 
 17
 EDWARDS, Circuit Judge (dissenting).
 
 
 18
 I agree with my brethren that on the pleadings before them the District Judges were right in refusing to set aside jury verdicts arrived at after lengthy trials, thus requiring new trials of the issues therein considered.
 
 
 19
 I do not, however, agree that the stringencies of Federal Rules of Civil Procedure require the federal courts to leave in limbo the astonishing charges upon which these motions were based.
 
 
 20
 The principal cases[1] arose out of a strike in Harlan County, Kentucky. It was alleged in each of the two cases as to which these motions are filed that many acts of violence, destruction and depredation were committed, most of them by unnamed and unidentified personages, but attributed by plaintiffs, and ultimately by the juries, to defendant, United Mine Workers of America.
 
 
 21
 Long after the trials, and indeed after the judgment in the Sunfire case had been appealed, affirmed and satisfied, and while the appeal in the Elkhorn case was pending before this court, defendant moved for new trials, basing the motions on Rule 60(b) and upon an affidavit known as the Kilburn Affidavit, which is hereinafter set forth in full:
 
 "Kilburn Affidavit"
 
 22
 "STATE OF KENTUCKY
 COUNTY OF PERRY Affidavit
 
 
 23
 "I, Ira Kilburn, state that I am a citizen and resident of Hazard, Perry County, Kentucky; I further state that I am a member of the Hazard Police Force and that I was such during the year of 1959; I further state that I have had threats made against my life on account of my having knowledge of certain acts which were committed during the strike during the year of 1959, and being in fear of my life, I make the following statement concerning the acts and incidents committed by R. D. Cisco, Chief of Police of Hazard, Kentucky and George Smith a member of the police department and other persons.
 
 
 24
 "Ritchie's Tipple at Viper, Kentucky was burned by Paul Tayloe, R. D. Cisco and George Smith.
 
 
 25
 "Ritchie's Tipple at Sassafras, Kentucky was burned by Ritchie's guards. The scale house was burned by Paul Tayloe, R. D. Cisco, George Smith and Dick Johnson.
 
 
 26
 "The union hall at Blackey, Kentucky, was burned and dynamited by Paul Tayloe, R. D. Cisco.
 
 
 27
 "Doctor Begley's cabin at London, Kentucky was burned by C. C. Begley, George Smith and Tommy Kilburn.
 
 
 28
 "Bill Turner's car burned at Sterling Warehouse by Paul Tayloe, and R. D. Cisco.
 
 
 29
 "Nyn Cornett's car at Brown's Fork dynamited by Tommy Kilburn and the dynamite was furnished by Paul Tayloe.
 
 
 30
 "Doug Duff's car burned on bypass by C. C. Begley, Tommy Kilburn, R. D. Cisco.
 
 
 31
 "Pokey Gayheart's house burned by C. C. Begley and George Smith.
 
 
 32
 "Colored Boy's car at top of town mountain burned by George Smith and Tommy Kilburn.
 
 
 33
 "Union Picket's coffee pot shot off fire by George Smith and Paul Tayloe at Cornettsville, Kentucky.
 
 
 34
 "Combs Drive-In on Combs Road dynamited by R. D. Cisco, George Smith and Ira Kilburn.
 
 
 35
 "Dipsey Doodle Drive Inn shot up by R. D. Cisco, C. C. Begley and Ira Kilburn.
 
 
 36
 "Dipsey Doodle dynamited by Tommy Kilburn with dynamite furnished by Paul Tayloe.
 
 
 37
 "Baker's car at Combs, Kentucky shot up by R. D. Cisco, George Smith and Ira Kilburn.
 
 
 38
 "Pistol belonging to George Dewey Baker was stolen out of Baker's car by R. D. Cisco.
 
 
 39
 "A man that I do not remember his name was arrested for drunken driving and his snub nose pistol was stolen out of his car by R. D. Cisco.
 
 
 40
 "I am making this statement due to fear for my life and in the event that I should lose my life, I want this statement presented to the Grand Jury for its consideration. George Smith has made threats against my life and I feel that due to the fact that I have knowledge of the foregoing facts which make the jobs of both George Smith and R. D. Cisco uncertain that they might make some attempt against me.
 
 
 41
 "I have read the foregoing two pages and they are true and correct.
 
 
 42
 "This 10th day of August, 1962.
 
 
 43
 /s/ "Ira Kilburn"
 
 
 44
 It appears from another affidavit attached to defendant's motions that the two episodes of burnings at Ritchie's Tipples were the subject of testimony by Ritchie in both of the United Mine Workers' cases which are currently before the court, and that in relation to each, the trial judge charged in substance that testimony pertaining to the burning of each of these Tipples at Viper and at Sassafras, Kentucky, could be considered by the jury as part of a pattern of violence which occurred during the course of this strike, and which plaintiffs attributed to the United Mine Workers.
 
 
 45
 The Kilburn Affidavit, if it were to be believed, would suggest that in fact Ritchie's Tipple at Viper, Kentucky, and Ritchie's Tipple at Sassafras, Kentucky, were burned as a result of an illegal conspiracy between two or more of the mine operators and the police chief and various members of the police department of Hazard, Kentucky.
 
 
 46
 If we assume that the affidavit which we have quoted above is either false or of such a second, third, or fourth-hand hearsay nature as to be for all practical purposes valueless as evidence, it is patent that the District Judges were right.
 
 
 47
 These motions and affidavits, however, were not met by counteraffidavits. The factual allegations they contain stand before us (as they did before the District Judges) undenied.
 
 
 48
 If we assume, and the terms of the affidavit are broad enough for such an alternative assumption, that the astonishing allegations contained in the Kilburn Affidavit fall within the personal knowledge of the affiant, then, indeed, we have the suggestion of a major conspiracy between mine operators and agents of law enforcement to perpetrate violence themselves, conceal the source of the perpetration, and ultimately throw the blame for that violence upon the defendants in this case. Such an allegation is bound to represent either malicious perjury or suppressed truth.
 
 
 49
 The courts of this land are not without power to deal with allegations like these, which really charge fraud upon the court.
 
 
 50
 Rule 43(e) of the Federal Rules of Civil Procedure allows for the taking of testimony and the holding of a hearing on motions when the motion contains allegations of facts not appearing in the record of the trial. Fed.R.Civ.P. 43(e), Evidence on Motion, states:
 
 
 51
 "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."
 
 
 52
 Rule 60(b) (6) gives power to the court to grant a new trial for any other reason justifying relief from the operation of the judgment. It contains no time limitation. Fraud upon the court would indeed be an "other reason."
 
 
 53
 The leading case dealing with motions made under Rule 60(b) is Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949).
 
 
 54
 The final order in Klapprott is reported at 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099 (1949) wherein the court ordered that the case be remanded to the District Court with a direction to "receive evidence on the truth or falsity of the allegations contained in petitioner's petition to vacate" the judgment. (Emphasis added.)
 
 
 55
 I do not believe that a motion which represents such a fundamental charge of fraud upon the court should be disposed of by a disposition based upon a technical time limitation. In my view these motions should be remanded to the District Judges, with instructions to take oral testimony on the motions and to determine whether or not there was probable cause to believe the charges contained therein.
 
 
 
 Notes:
 
 
 [1]
 Sunfire Coal Co. v. United Mine Workers of America, 313 F.2d 108 (C.A.6, 1963); R. P. Price, et al. v. United Mine Workers of America, Case No. 15,046 currently pending before this court