Clyde **ABBOTT** et al., Plaintiffs-Appellees,

v.

**LOCAL UNION NO. 142 OF the UNITED ASSOCIATIONS OF JOURNEYMEN AND APPRENTICES OF the PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA et al., Defendants-Appellants.**

No. 28817.

United States Court of Appeals, Fifth Circuit.

July 20, 1970.

Arthur Gochman, Warren Weir, San Antonio, Tex., David R. Richards, Austin, Tex., for defendants-appellants.

L. Bruce Fryburger, George W. Krog, San Antonio, Tex., for plaintiffs-appellees.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge.

In a non-jury trial plaintiffs were awarded damages under § 303(b) of the Labor Management Relations Act, 29 U.S.C. § 187(b), for economic losses resulting from picketing in violation of § 303(a), 29 U.S.C. § 187(a). The union appeals on issues of damages. We affirm in part, reverse in part and remand for further proceedings.

A school district awarded Clyde Abbott ("Abbott") a contract to build a classroom addition for the McCollum High School in San Antonio, Texas, on his bid of $256,745. To perform the job Abbott formed a corporation, Clyde Abbott, Inc. The plumbing subcontractor was Donald Moore.

The school district arranged directly with Moore for him to do a small plumbing job at the site. It was not included in the contract with Abbott, and involved $230. In performing this task Moore used two day laborers that the union contended must be paid at the union rate because they lifted some pipe from a truck and placed it in a ditch.[1] Moore finished the task, removed his equipment and left the premises, since his work as subcontractor was not to commence until later. The union began picketing the job site. Union men refused to cross the picket line and work stopped.

On behalf of Clyde Abbott, Inc., an attorney filed with the National Labor Relations Board a charge that the picketing was an unfair labor practice. Abbott attempted to contact the union and have it order the picketing stopped. Clyde Abbott, Inc., set up a marked reserve gate for Moore and his suppliers and marked the union gate as not to be used by them.

The picketing stopped after about seven weeks, pursuant to a settlement agreement. Clyde Abbott, Inc., completed the job along with a separate contract for remodeling work on the McCollum School.

█ The only issue raised by the union in its original brief is that of damages. The contention is made for the first time in the union's reply brief, filed by different counsel, that the strike was legal until the reserve gate was established and only illegal thereafter, and that the opinion of the District Court should be construed as so holding. We decline to consider this belatedly injected issue of law, fact and construction, raised after the appellees filed their brief.

█ Moore's damages of $246.71 were limited to time and money expended by him in an attempt to have the picketing stopped or at least confined to one gate. Evidence supports the determination of the District Court both as to amount and as to causation. In Sheet Metal Workers, etc. v. Atlas Sheet Metal Co., 384 F.2d 101 (5th Cir. 1967), this court pointed out that long distance telephone calls could be recovered if "directly related to or caused by the unlawful secondary activity." 384 F.2d at 110. We see no difference in principle between the costs of long distance calls and the costs of travel and time expended for the purpose of ending the strike. We therefore affirm as to this award.

█ Abbott was awarded $750 for seven and one half days time spent by him in securing termination of the picketing. The union contends that Abbott, who was manager of the corporation, is not one who can recover under § 303(b) for economic damages suffered from a secondary boycott. United Mine Workers of America v. Osborne Mining Co., 279 F.2d 716 (6th Cir.) cert. denied, 364

---

1. The District Court found this did not occur.

U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 103 (1960), denied to a partnership damages for the commissions it would have earned on the sale of Osborne's coal had Osborne's business not been destroyed by the illegal union activity. But in Gilchrist v. United Mine Workers, 290. F.2d 36 (6th Cir. 1961), a partnership and two corporations sued for damages resulting from a secondary boycott directed primarily at the two corporations. The court distinguished *Osborne*, holding that as the partnership owned the coal leases, mining machinery equipment and facilities and farmed out the actual mining to one of the corporations, whose stock was closely held by the partners, it was directly affected by the boycott and entitled to sue.

 Abbott was in a position similar to that of the partnership in *Gilchrist*. Clyde Abbott, Inc., was his alter ego. We conclude that Abbott is one who could recover under § 303(b) for damages suffered by him individually. Whether he has proved such damages is another matter. The corporation could recover for Abbott's "lost time" to the extent he was rendered unproductive by the picketing, *Sheet Metal Workers, supra,* 384 F.2d at 110. Determining such damages would require consideration of what the corporation paid him for his services and whether his services to it were full time or part time. If Abbott worked less than full time for the corporation and devoted part of his time to other work, to the extent the seven and a half days included his "private time" he would be entitled to reimbursement for his loss at the rate usually received by him for his private work, provided he proved that such work was reasonably available at the time.

The trial judge granted judgment to Clyde Abbott, Inc., in the amount of $12,340.20, consisting of four items: lost profits, $11,218.17; attorney fees $924.25; travel expenses for Abbott and the attorney, $75.18; manufacturing and posting signs at the job site, $122.-60. The loss of profits was measured by calculating the difference between the actual profit on the McCollum classroom project and the average profit made by Clyde Abbott, Inc., and Abbott on other contracts performed over a three-year period.

█ The evidence supporting lost profits was admissible. Clyde Abbott, Inc., introduced a summary of its business records. There was testimony by Abbott himself that the books and accounting records were prepared in the regular course of business, that it was the regular course of business for an employee under Abbott's supervision with personal knowledge of the acts contained in the records to make such records or to transmit information thereof to be included in such records, and that the entries in the records were made at or near the time of the acts involved in the entries, or reasonably soon thereafter. The Texas Business Records Act was thus complied with so far as the books of account were concerned, Vernon's Ann.Tex.Civ.Stat. Art. 3737(e) §§ 1 and 2, and the records themselves were admissible under Fed.R.Civ.P. Rule 43(a). Texas admits "a tabulated schedule or summary of voluminous records" at the discretion of the trial court "to expedite the trial and aid the trier of fact." Cooper Petroleum Co. v. La Gloria Oil and Gas Co., 436 S. W.2d 889, 891 (Tex. 1969), 4 Wigmore, Evidence § 1230 (3d ed. 1940). Thus, the summary was admissible.

█ The evidence of lost profits was sufficient. Clyde Abbott, Inc., introduced evidence showing that defendant's picketing caused damage to the corporation by stopping the work. It showed that as a result of the work stoppage construction was delayed and had to be performed under adverse rather than favorable climatic conditions, that bad weather meant excess labor, reworking and extra work, and that the work stoppage wrecked the coordination of the

job, which was essential to successful and profitable performance.

The corporation established by the business records that Abbott had an ongoing and successful business as a contractor at the commencement of the picketing, that upon projects built by Abbott and Clyde Abbott, Inc., from 1964 to 1967 the average profit had been 9.6%, while the corporation realized a profit of only 5.1% on the McCollum project.

Having established disruption of the project and a lower than average rate of return on the project the plaintiffs introduced evidence showing that the low rate of profitability was not attributable to causes other than the picketing. Proof was introduced demonstrating that: (1) the project was bid in the customary manner; (2) the bid was neither excessively high nor inordinately low; (3) factors which had resulted in lower than average profits on other Abbott jobs (e. g. torrential rains, incompetent labor, unusually small size of project, discounts to religious institutions) were absent from this project; and (4) nothing about this job was especially complicated or challenging.

■ This evidence clearly supports the just and reasonable approximation of lost profits made by the District Court, in subtracting actual profits from average profits. In actions of this sort courts have not required rigorous proof of the loss. In *Sheet Metal Workers, supra,* the rule is stated thusly: "While the employer must prove that he has sustained some injury to his business or property, he need not detail the actual amount of damages suffered. It is sufficient if the evidence supports a just and reasonable approximation." 384 F. 2d at 109. Accord, Gulf Coast Building & Supply Co., Inc. v. International Brotherhood of Electrical Workers, 428 F.2d 121 [5th Cir., 1970]. See also Local Union 984 Int. Bro. of Teamsters, etc. v. Humko Co., 287 F.2d 231 (6th Cir. 1961); United Mine Workers of America v. Osborne Mining Co., *supra.*

There is no merit to the contention that there was suppression by Clyde Abbott, Inc., of its job cost estimates. There was testimony they had been thrown away, and in any event they would have shown only anticipated profits.

■ Travel expense, costs of the signs at the job site and attorney fees[2] are proper subjects for recovery. But the union contends that they have been recovered doubly. If they were included on the books of the corporation as expenses for the McCollum job, the profits of the corporation would be diminished to the extent the job expenses were so increased, and the items would have been recovered as part of the lost profits. On the record before us we cannot tell whether there has been a double recovery, which would be precluded by the compensatory nature of § 303. Cf. Local 20, Teamsters, etc. v. Morton, 377 U. S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964).

As to Moore, the judgment must be affirmed. As to Abbott individually, the judgment must be reversed and remanded. As to Clyde Abbott, Inc., the judgment must be vacated and the cause remanded for additional findings and for entry of such judgment as is appropriate. The lost profits award of $11,-218.17 is not to be relitigated. As to awards for attorney fees, travel expense and cost of signs, the court must make additional findings (either on the present record or with additional evidence as it may desire) as to each item, determining whether it was included in the lost profits calculation. To the extent not included, if any, the corporation is entitled to judgment therefor. 28 U. S.C. § 2106.

2. H. L. Robertson & Associates, Inc. v. Plumbers Local Union No. 519, 429 F.2d 520 [5th Cir., 1970).

Affirmed in part, reversed in part, remanded for additional proceedings in conformity with this opinion.

Costs are to be divided one-half to the union, one-fourth to Abbott individually, one-fourth to Clyde Abbott, Inc.