LODGE 76, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, and another, Appellants, v. WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent: KEARNEY & TRECKER CORPORATION, Intervenor-Respondent.*

*No. 405. Argued February 3, 1975.—Decided March 4, 1975.*
(Also reported in 226 N. W. 2d 203.)

* Motion for rehearing denied, without costs, on May 6, 1975.

For the appellants there were briefs by *Goldberg, Previant & Uelmen,* attorneys, and *Robert E. Gratz* and *Gerry M. Miller* of counsel, all of Milwaukee, and oral argument by *Mr. Miller* and *Mr. Gratz.*

For the respondent the cause was argued by *Charles D. Hoornstra,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the intervenor-respondent there was a brief by *Michael, Best & Friedrich,* attorneys, and *James C. Mallatt, Jacob L. Bernheim* and *John R. Sapp* of counsel, all of Milwaukee, and oral argument by *Mr. Sapp.*

A brief amicus curiae was filed by *Zubrensky, Padden, Graft & Bratt* of Milwaukee for the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America.

HANLEY, J.   The sole issue involved upon this appeal is whether the state of Wisconsin is precluded from enjoining a concerted refusal to work overtime which is in violation of sec. 111.06 (2) (h) of the Wisconsin Statutes.

The union's conduct is not denied. They challenge the state's authority to enforce the statute, sec. 111.06 (2) (h).

The union makes two arguments in support of its position that the state does not have the power to restrain peaceful concerted activities by unions. The first is that such activities are "permitted" by the NLRA and as such are not subject to state restraint. The second is that the state lacks the power to restrain such activities as are involved here because such conduct is arguably protected by the NLRA.

The respondents argue that conduct involved here was not permitted by the NLRA. They further argue that such conduct was not protected by the NLRA and that the permitted category is inapplicable in this case.

In *Automobile Workers v. Wisconsin Employment Relations Board* (1949), 336 U. S. 245, 69 Sup. Ct. 516, 93 L. Ed. 651, rehearing denied, 336 U. S. 970, 69 Sup. Ct. 935, 93 L. Ed. 1121 (hereinafter *Briggs and Stratton*) the United States Supreme Court reviewed a decision of this court which had upheld a board order requiring a labor union to cease and desist from instigating certain intermittent and unannounced work stoppages in an employer's plants. The supreme court held that it could find no basis for denying this state the power to regulate a cause of conduct neither made a right under nor a violation of federal law. The court stated:

". . . While the Federal Board is empowered to forbid a strike, when and because its purpose is one that the Federal Act made illegal, it has been given no power to forbid one because its method is illegal—even if the

illegality were to consist of actual or threatened violence to persons or destruction of property. Policing of such conduct is left wholly to the states." 336 U. S. at 253.

The court went on to determine that the conduct of the union was not subject to regulations by the federal board and that the activity was not protected by sec. 7 of the NLRA.

Subsequent to that decision, the supreme court has considered this issue in a number of cases. In *Garner v. Teamsters Union* (1953), 346 U. S. 485, 74 Sup. Ct. 161, 98 L. Ed. 228, the court affirmed a Pennsylvania Supreme Court decision which held that a state court could not enjoin certain picketing by a union. The court stated:

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . . ." 346 U. S. at 490.

It was noted that the policy of the Labor Management Relations Act (LMRA) is not to condemn all picketing and that the detailed prescription of a procedure for restraint of specified types of picketing implies that other picketing is to be free of other methods and sources of restraint. ". . . For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits." 346 U. S. at 500. It was

recognized though, that the LMRA does leave much to the states.

*Garner,* the union says, holds that states cannot regulate peaceful economic weapons left free by federal law. However, *Garner* dealt with an area Congress had "taken in hand," namely, inducements to union membership. Therefore, Pennsylvania procedures and processes could not operate. In *Garner,* a national labor act purpose was frustrated by the state action. That is not the situation in the instant case.

In *San Diego Unions v. Garmon* (1959), 359 U. S. 236, 79 Sup. Ct. 773, 3 L. Ed. 2d 775, a California court had awarded damages for picketing which it concluded violated not only state law but also sec. 8 (b) (2) of NLRA. The United States Supreme Court reversed holding that:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by sec. 7 of the National Labor Relations Act, or constitute an unfair labor practice under sec. 8, due regard for the federal enactment requires that state jurisdiction must yield. . . .

". . .

". . . When an activity is arguably subject to sec. 7 or sec. 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U. S. at 244, 245.

We think *Garmon* amplified the protected-prohibited test set forth and declined to follow the "approach" of *Briggs and Stratton* under which the court itself determined the protected or prohibited nature of the activity.

That only the "approach" rather than substantive rulings of *Briggs and Stratton* was rejected is clear from the statement cited by appellants at page 14 of their brief.

"The approach taken in that case, in which the Court undertook for itself to determine the status of the dis-

puted activity, has not been followed in later decisions, and is no longer of general application." (359 U. S. at 245, fn. 4.)

The rules on pre-emption in the area of labor law were stated to be as follows in *Hanna Mining Co. v. Marine Engineers* (1965), 382 U. S. 181, 86 Sup. Ct. 327, 15 L. Ed. 2d 254:

"The ground rules for pre-emption in labor law, emerging from our *Garmon* decision, should first be briefly summarized: in general, a State may not regulate conduct arguably 'protected by sec. 7, or prohibited by sec. 8' of the National Labor Relations Act, see 359 U. S., at 244–246; and the legislative purpose may further dictate that certain activity 'neither protected nor prohibited' be deemed privileged against state regulation, cf. 359 U. S., at 245. . . ." 382 U. S. at 187, 188.

Despite these ground rules, the court reversed a decision of this court which had held that the state court lacked subject matter jurisdiction because the picketing involved arguably violated sec. 8 of the Federal Labor Act. The picketing was part of an effort by a union which had represented supervisors. The court held that because supervisory workers were involved the activity was not arguably protected and also that it was not "in the respects immediately relevant prohibited by it."

It further held that Congress had not taken a policy of laissez faire toward supervisors which would oust state authority. 832 U. S. at 188, 189.

In *Motor Coach Employees v. Lockridge* (1971), 403 U. S. 274, 91 Sup. Ct. 1909, 29 L. Ed. 2d 473, rehearing denied, 404 U. S. 874, 92 Sup. Ct. 24, 30 L. Ed. 2d 120, the court reaffirmed the *Garmon* rules. The court once again pointed out that it could not declare that all local regulations involving the complex interrelationships between employers, employees and unions has been pre-empted and that ". . . much of this is left to the states." 403 U. S. at 289. The court reaffirmed the "arguably

protected-arguably prohibited" test of *Garmon,* however, and held a state court did not have jurisdiction in an action by an employee against his union based on an alleged breach of conduct by the union in procuring the employee's discharge from employment because the conduct involved was arguably protected or prohibited by the NLRA.

This court has recognized these principles of pre-emption in the area of labor law. It was held in *Wisconsin Employment Relations Comm. v. Atlantic Richfield Co.* (1971), 52 Wis. 2d 126, 187 N. W. 2d 805, that the WERC was not prohibited from regulating collective bargaining in one-man bargaining units because the NLRB lacks jurisdiction in such cases and no national labor act purpose was frustrated by such state action.

The union here argues that their activity was arguably protected by the NLRA and, therefore, pre-emption exists. Initially, it had moved to dismiss the complaint before the WERC because the activity was arguably prohibited. The respondents take the position that it is neither.

In this case the only action on the national level was the NLRB's regional director's letter refusing to issue a complaint. The regional director stated that "this action does not appear to be in violation of the act." The trial judge noted in his decision that the failure of the federal agency to take affirmative action does not confer power to act on the state. It is true that a letter from the regional director itself does not resolve the question with the clarity necessary to avoid pre-emption. However, in *Garmon* it was recognized that "compelling precedent" may provide that clear determination by the board.

The union does not contend here that the conduct is prohibited. The supreme court's decision in *Labor Board v. Insurance Agents* (1960), 361 U. S. 477, 80 Sup. Ct. 419, 4 L. Ed. 2d 454, makes it clear that activity of this nature is not prohibited. There the union members were

engaged in harassing tactics including the refusal for a time to solicit new business, refusal to comply with company recording procedures, refusal to perform customary office duties and other activities. The NLRB held that such activities constituted a violation of sec. 8 (b) (3) of the NLRA, as amended, which makes the refusal to bargain collectively with an employer an unfair labor practice. The supreme court, in affirming a court of appeals decision setting aside the board's order, held that the board could not regulate "economic weapons" under the section requiring collective bargaining. Therefore, the activity involved here, the concerted refusal to work overtime, is not prohibited by the act. In refusing to issue a complaint in this case, the regional director relied on the *Insurance Agents Case*. The case merely holds that the NLRB had no power to regulate strike tactics and left regulation of strike tactics to the states. The case distinguishes between the power of the states to deal with strike tactics and the power of NLRB to deal with strike purposes. *Briggs and Stratton* is authority for this position.

The union does, however, argue that the conduct here is protected by sec. 7 of the NLRA. It relies heavily on the case of *Dow Chemical Co.* (1965), 152 NLRB 1150. That case involved an employee who had engaged in activity connected with the refusal of employees to volunteer for weekend work. The NLRB held that such activity was protected concerted activity. It said:

". . . Here, however, Piatek's discharge was based in substantial part on her activity connected with the refusals to volunteer for work on March 7–8, and on March 7–8 the respondent's new work schedule was not yet in effect and therefore weekend work was still voluntary. In such circumstances, since the employer had already agreed to permit employees to decide for themselves whether they wished to work weekends, we cannot say employees, by refusing to volunteer for work, lost the protection of the Act because they sought to impose

on their employer their own conditions of employment. . . ." 152 NLRB at 1152.

The WERC seeks to distinguish *Dow* on two grounds. The first is that *Dow* involved the refusal to volunteer for overtime and in the case at bar the refusal was to work scheduled overtime. The second factor is that *Dow* involved no union inducement.

There may be a question as to whether *Dow* is in fact distinguishable. However, a more recent case appears to answer the question. In *Prince Lithograph Co., Inc.* (1973), 205 NLRB (No. 23, 1973), CCH, NLRB Dec. Par. 25,614, the NLRB affirmed the rulings, findings and conclusions of the administrative judge and adopted his recommended order. One of the issues involved was whether the termination and/or replacement of one employee violated the NLRA on the ground that it discouraged union membership. The employee had been discharged for refusing to work overtime as a part of a concerted refusal on the part of union members during contract negotiations and was at the direction of the local union. Overtime was voluntary. The administrative law judge stated:

"In the instant case the purpose of the strike was not . . . unlawful but I do not think that distinction controlling. If an overtime strike, protected by a voluntary right to refuse overtime, for an unlawful object constitutes a violation of the statute it would appear to be equally true that an overtime strike to bring economic pressure against a primary employer is unprotected despite the same contractual provision." (Slip. Op. at p. 11.)

It was held that a concerted refusal to work scheduled or requested overtime is not protected, even if that overtime is voluntary. In *Prince* as in the case here, the union imposed a ban on overtime as a bargaining tactic.

We think that *Prince Lithograph Co., supra,* rather than *Dow, supra,* controls in this case. The activity here, under *Prince,* was unprotected activity. Therefore, the

activity involved in this case is not arguably protected or arguably prohibited by the NLRA. It follows that pre-emption, under this test, is not involved in this case.

The union contends that even if the activity involved in this case is not arguably protected or arguably prohibited, it is "permitted" and the state cannot regulate it. It argues that peaceful concerted activity involved here is such as to be in an area to which there is a federal policy of laissez faire and this policy is part of the balance struck by regulation of these "permitted" activities.

The respondents both argue that the permitted rule only applies to areas where Congress has focused on similar conduct and not touched the particular conduct involved. They assert that this is not the case here and, therefore, if the application of the arguably protected or prohibited test does result in pre-emption, then the states are free to regulate in this area. The WERC also takes the position that the "permitted" category only applies where the NLRB could act and does not apply to the strike tactic situation.

As has already been noted, the supreme court in *Briggs and Stratton* held that it could find no basis for denying this state the power to regulate a course of conduct neither made a right nor a violation of the federal law. The approach taken in that case has been changed, as has been discussed above, by *Garmon, supra.* The court has not, however, expressly overruled its decision in that case that a state can regulate such conduct.

Appellants rely heavily upon the decision of the United States Supreme Court in *Teamsters Union v. Morton* (1964), 377 U. S. 252, 84 Sup. Ct. 1253, 12 L. Ed. 2d 280, in challenging the application of the arguably prohibited or protected test. In *Morton* the action was brought pursuant to sec. 303 of the Labor Management Relations Act which authorized suit by any person injured as a result of a special secondary conduct prohibited by the act.

The Ohio Federal District Court found the union had violated sec. 303 by inducing and encouraging employees of a neutral employer to stop using the trucks of the plaintiff in order to force the neutral employer to stop doing business with the plaintiff. The supreme court affirmed this finding of a "clear violation of sec. 303." 377 U. S. at 256.

The union in *Morton* had, however, engaged in another instance of secondary boycott activity, a direct approach by the union to a neutral employer to persuade it not to do business with the plaintiff. Although finding that such activity was not in violation of sec. 303 since the union had approached the neutral employer directly rather than through its employees, the court, nevertheless, awarded damages on the basis of state common law. The supreme court affirmed the district court's award of damages under sec. 303, but it reversed the awards based on the Ohio law dealing with secondary boycotts.

The supreme court reversed the latter award even though assuming that at least some of the secondary activity involved was neither protected nor prohibited, noting:

"The type of conduct to be made the subject of a private damage action was considered by Congress, and sec. 303 (a) comprehensively and with great particularity 'describes and condemns specific union conduct directed to specific objectives.'" 377 U. S. at 258.

The court concluded:

"If the Ohio law of secondary boycott can be applied to proscribe the same type of conduct which Congress focused upon but did not proscribe when it enacted sec. 303, the inevitable result would be to frustrate the congressional determination to leave this weapon of self-help available, . . ." 377 U. S. at 259, 260.

In *Morton* the fact of congressional focus showed that the activity was beyond state jurisdiction. Such is not

the case here. Unlike the very comprehensive statutory treatment of secondary boycotts, Congress has not "focused upon" partial or "quickie" strikes. Policing of such conduct is left wholly to the states.

We agree with the WERC and the trial court that the doctrine of federal pre-emption does not require the WERC to refrain from relating the union's conduct in authorizing concerted refusal of employees to accept overtime assignments. Since the conduct involved in this case is not protected, prohibited or contrary to any legislative purpose of the federal labor act the judgment appealed from must be affirmed.

*By the Court.*—Judgment affirmed.