CHARLES R. DAVENPORT, PLAINTIFF-APPELLANT, v. AL-
FRED TERRY, INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AND INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS LOCAL
NUMBERS 52, 102, 164, 211, 262, 269, 358, 400, 439, 456,
581, 592, 375, 334, AND 367 AND BERNARD J. CLARKIN,
E. LOUIS BARAM, HOWARD SCHIER, JR., HARRY F.
HILTNER, JR., ROBERT CARTWRIGHT, JR., DONALD
KENNEDY, JOHN C. BOLL, GRANTE TATE, JR., PHILIP
KELLY, FRANK MARCHITTO, FRANK KELLY, GEORGE
J. ROWSON, JOHN O'CONNOR, THOMAS ALLEN, ROB-
ERT J. SHAFFER AND WALTER TERRY, DEFENDANTS-
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted April 15, 1975—Decided May 6, 1975.

90

Before Judges LORA, CRANE and KOLE.

*Mr. William O. Barnes,* attorney for appellant (*Messrs. Yauch, Peterpaul and Clark,* of counsel; *Mr. Frank J. Peterpaul* on the brief).

*Messrs. Lamb, Hutchinson, Thompson and Chappell and Messrs. Sherman, Dunn, Cohen and Leifer,* attorneys for respondents, Alfred Terry and International Brotherhood of Electrical Workers (*Messrs. Raymond J. Lamb, Thomas X. Dunn and Robert L. Barton, Jr.,* on the brief).

*Messrs. Parsonnet, Parsonnet and Duggan,* attorneys for respondents Locals 52, 102, 164, 358, 400, 456, 581, and 367 of the I. B. E. W. and respondents Clarkin, Baram, Schier, Boll, Tate, Marchitto, Kelly and Shaffer (*Mr. Thomas L. Parsonnet,* of counsel).

*Messrs. Meth, Wood, Neff and Cooper,* attorneys for respondents Local 262 of the I. B. E. W. and Robert Cartwright, Jr. (*Mr. Robert Carey Neff* on the brief).

*Messrs. Nolan, Lynes, Bell and Moore,* attorneys for respondents John O'Connor and Local 675 — I. B. E. W. (*Mr. Jerome M. Lynes* of counsel; *Mr. Jay Scott MacNeill* on the brief).

*Messrs. Pellettieri and Rabstein,* attorneys for respondents I. B. E. W. Local Numbers 269 and 334, Donald Kennedy and Thomas Allen, filed a statement in lieu of brief.

*Messrs. Tomar, Parks, Seliger, Simonoff and Adourian,* attorneys for respondents I. B. E. W. Local Numbers 211, 439 and 592, Harry F. Hiltner, Jr., Philip Kelly and George J. Rowson, filed a statement in lieu of brief.

*Messrs. Nugent, Russo and Tumulty,* attorneys for respondent Walter Terry, filed a statement in lieu of brief.

No brief was filed on behalf of Local Number 375 of the I. B. E. W.

The opinion of the court was delivered by
KOLE, J. A. D.  Plaintiff instituted this action on January 28, 1973 against Alfred Terry, his son Walter Terry, the International Brotherhood of Electrical Workers (IBEW), 15 locals of IBEW and the business agents of each local for allegedly conspiring tortiously to interfere with his employment and cause it to be terminated by

spreading false and malicious statements concerning his character. The complaint also requested relief against Alfred Terry alone for tortious interference with plaintiff's employment relationship. Compensatory and punitive damages were sought. Defendant moved for summary judgment and dismissal of the complaint, claiming that jurisdiction over the subject matter of the action had been preempted by the National Labor Relations Act, as amended (NLRA), and that plaintiff's cause of action, if one for slander or libel, was barred by the one-year statute of limitations, *N. J. S. A.* 2A:14-3. The motions to dismiss the complaint were granted, predicated on lack of jurisdiction. Plaintiff appeals.

The allegations of the complaint, which were not disputed for the purposes of the motions, showed the facts which are hereafter set forth.

The National Electrical Contractors Association, New Jersey Chapter (NECA), an organization that represents electrical contractors in their bargaining relationship with various electrical worker trade unions, hired plaintiff in 1968 to serve as its manager. The following year plaintiff was promoted to the position of general manager and the NECA employed Walter Terry, Alfred Terry's son, as an assistant manager. A conflict with Alfred Terry, an international representative of IBEW, followed plaintiff's selection of someone other than Terry's son to assist plaintiff in handling an increased workload. Threats of union reprisal and bribery attempts were thereafter made by the elder Terry to induce plaintiff to give Walter Terry "first consideration" in placement and promotion within the NECA. Alfred Terry also sought $1,000 cash for his son or "your contractors will have a hell of a lot of trouble." He further instructed plaintiff to discharge his new assistant, in which event, he said, plaintiff would be given a better position, have a car at his disposal, paid a good salary and would be "well taken care of."

In July 1970 plaintiff fired Walter Terry on the grounds of incompetence and conduct detrimental to the interests of the NECA. Plaintiff thereupon became the subject of a malicious campaign directed principally by Alfred Terry, in which veiled charges of corruption were made concerning plaintiff's handling of certain NECA funds, assaults upon his character were made by the heads of defendant locals, and work stoppages by IBEW members were encouraged on jobs they were performing for NECA contractors. Alfred Terry also disrupted and caused a termination of a union-management negotiating meeting by alleging that plaintiff, who was participating therein, was associated with organized crime. Plaintiff asserts that these acts and statements, together with pressure exerted upon members of the NECA and its national office, were intended to effect, and were responsible for, his dismissal.

From the description of plaintiff's duties contained in the complaint, plaintiff is a supervisor as that term is defined in 29 *U. S. C. A.* § 152(11). As a representative of management he would not be protected by the NLRA insofar as his relationship with his employer, the NECA, is concerned. See *Beasley v. Food Fair of North Carolina,* 416 *U. S.* 653, 94 *S. Ct.* 2023, 40 *L. Ed.* 2d 443 (1974).

The present dispute, however, involves a union rather than an employer. Under these circumstances, the actions complained of describe possible violations of NLRA provisions that prohibit unfair labor practices by labor organizations or their agents.

29 *U. S. C. A.* § 158(b)(1)(B) provides that it is an unfair labor practice for a union to "restrain or coerce * * * an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances."

Plaintiff was discharged because of his refusal to advance, and his later firing of, Walter Terry. The conduct of defendants in causing such dismissal would adversely

affect plaintiff's performing the duties of, and acting in his capacity as, a collective bargainer on behalf of his employer, NECA. The unions and their agents may be said to have attempted thereby to dictate to the employer association who would represent its members in collective bargaining. To that extent defendants' conduct arguably constitutes an unfair labor practice under 29 *U. S. C. A.* § 158(b)(1)(B) subject to the exclusive jurisdiction of the National Labor Relations Board (NLRB) and thus are matters preempted from state court jurisdiction. See *Florida Power & Light Co. v. Int'l Bhd. of Elec. Workers,* 417 *U. S.* 790, 94 *S. Ct.* 2737, 41 *L. Ed.* 2d 477, 484, 487-488 (1974); *NLRB v. Silver Bay Local Union No. 962, etc.,* 487 *F.* 2d 26 (9 Cir. 1974); *NLRB v. Sheet Metal Workers' Int'l Ass'n,* 477 *F.* 2d 675 (5 Cir. 1973).

Additionally, Alfred Terry's slanderous interference with plaintiff's negotiating session with a union local resulted in the termination of discussions. Such acts on the part of Alfred Terry and the union local conceivably also may be construed as a violation of the union's obligation to bargain collectively in good faith with the employer's representative, pursuant to 29 *U. S. C. A.* § 158(b)(3), and thus an unfair labor practice subject to the exclusive jurisdiction of the NLRB. See, *e. g., Associated Gen. Contractors of America v. NLRB,* 465 *F.* 2d 327, 334-335 (7 Cir. 1972), *cert.* den. sub nom. *Local Union No. 103, Int'l Ass'n, etc. v. NLRB,* 409 *U. S.* 1108, 93 *S. Ct.* 907, 34 *L. Ed.* 2d 689 (1973); *NLRB v. Bhd. of Teamsters, etc., Local No. 70,* 459 *F.* 2d 694 (9 Cir. 1972).

█ The fact that plaintiff describes his cause of action as a malicious interference with his employment relationship and a conspiracy to procure his discharge, rather than as an unfair labor practice, will not preclude federal preemption if the federal statutory scheme is designed, as here, to regulate the type of conduct by a union or its agents set forth in the complaint. The focus of concern is the conduct being

regulated and not the formal description of applicable legal standards. *Amalgamated Ass'n of Street, etc., Employees v. Lockridge,* 403 *U. S.* 274, 287, 292, 91 *S. Ct.* 1909, 29 *L. Ed.* 2d 473 (1971); *Zarelli v. Operative Plasterers', etc., Local No. 699,* 125 *N. J. Super.* 412 (App. Div. 1973), and cases cited therein.

We need not determine whether in fact the conduct complained of is controlled by federal legislation. We need only decide, as we have, that the malicious activity described is arguably subject to 29 *U. S. C. A.* § 158 and thus preempted by the Federal Government. *San Diego Building Trades Council v. Garmon,* 359 *U. S.* 236, 79 *S. Ct.* 773, 3 *L. Ed.* 2d 775 (1959).

Plaintiff contends that defendants' conduct falls within one of the three exceptions to the preemption doctrine promulgated in *Amalgamated Ass'n of Street, etc., Employees v. Lockridge, supra,* 403 *U. S.* at 297, 91 S. Ct. 1909. He claims that, in accordance with one of the exceptions — *i. e.,* where Congress has affirmatively indicated that there should be state court jurisdiction — there is such jurisdiction under the circumstances set forth in the complaint. He relies on 29 *U. S. C. A.* § 186(b)(1) and § 187.

█ The provisions of § 186(b)(1) make it a crime for any person to request, demand, receive or accept, or agree to receive or accept, any payment or delivery of any money or thing of value prohibited by § 186(a). Although we express no views on this issue, it is possible that, read together, these two sections may prohibit payments or demands therefor, with certain exceptions, between any person acting in the interest of an employer and any union representative. See *United States v. Lanni,* 466 *F.* 2d 1102 (3 Cir. 1972). If this is so, conceivably Alfred Terry violated these provisions when he threatened to cause labor troubles if he did not receive $1,000 cash for his son or when he promised plaintiff pecuniary rewards and advancement in return for the dismissal of plaintiff's assistant. However,

jurisdiction over violations of this section, including the issuance of injunctions relating thereto, has been placed exclusively with the federal courts. See 29 *U. S. C. A.* § 186 (e) ; *Branch v. White,* 99 *N. J. Super.* 295, 311 (App. Div. 1968), certif. den. 51 *N. J.* 464 (1968).

Whether Congress intended that a claim for relief for civil damages may lie in either a federal or state court in favor of plaintiff in this kind of case by reason of violation of this federal criminal statute, § 186 (b) (1), need not be decided. The parties have not briefed the matter and it is not appropriate that we determine it.

■ Although an action brought pursuant to 29 *U. S. C. A.* § 187 may be instituted in a state court, the thrust of this enactment and the statute to which it relates (29 *U. S. C. A.* § 158 (b) (4) ) is to prohibit the practice of secondary boycotts, rather than the kind of conduct here involved. See *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton,* 377 *U. S.* 252, 258, 84 *S. Ct.* 1253, 12 *L. Ed.* 2d 280 (1964) ; *Nat'l Woodwork Mfrs. Ass'n v. NLRB,* 386 *U. S.* 612, 87 *S. Ct.* 1250, 18 *L. Ed.* 2d 357 (1967). Hence, we have concluded that plaintiff has no claim for relief under this statutory provision.

The second exception to the preemption doctrine relied on by plaintiff involves matters where it may not be conscientiously presumed that Congress meant to intrude so deeply into areas traditionally left to local law. These situations are characterized by the compelling state interest in the maintenance of domestic peace and in protecting its residents from malicious libels. See *Int'l Union, United Auto., etc., Workers v. Russell,* 356 *U. S.* 634, 78 *S. Ct.* 932, 2 *L. Ed.* 2d 1030 (1958) ; *Linn v. Plant Guard Workers Local 114,* 383 *U. S.* 53, 86 *S. Ct.* 657, 15 *L. Ed.* 2d 582 (1966). Compare *Old Dominion Branch No. 496 v. Austin,* 418 *U. S.* 264, 94 *S. Ct.* 2770, 41 *L. Ed.* 2d 745 (1974).

■ We are satisfied that, to the extent that the complaint alleges libel or slander and damages resulting there-

from, there is state court jurisdiction under the foregoing exception. The court below did not pass on the issue raised on the summary judgment motions as to the bar of the statute of limitations with respect to this claim for relief. The parties should have an opportunity to have this question determined by it. We consider the allegations in the complaint alone as inadequate for the resolution of that matter.

The final exception to the preemption doctrine in this area in which plaintiff seeks refuge is the situation where the particular rule of law sought to be invoked in a state court is so structured and administered that in virtually all instances it may be safely presumed that judicial supervision would not disserve the interests promoted by the federal labor statutes. See *Amalgamated Ass'n of Street, etc., Employees v. Lockridge, supra,* 403 *U. S.* at 297–298, 91 S. Ct. 1909, citing *Vaca v. Sipes,* 386 *U. S.* 171, 87 *S. Ct.* 903, 17 *L. Ed.* 2d 842 (1967).

*Vaca v. Sipes* held that state courts had jurisdiction over an action by an employee for damages against an employer for wrongful discharge and against a union for breach of its duty of fair representation. But the case involved a claimed breach of a collective bargaining agreement, a matter over which the state courts have jurisdiction by virtue of 29 *U. S. C. A.* § 185, even though arguably the breach is also an unfair labor practice subject to NLRB jurisdiction. See *P. T. & L. Constr. Co. v. Teamsters Local Union No. 469,* 131 *N. J. Super.* 104 (Law Div. 1973), aff'd 66 *N. J.* 97 (1974). The factual pattern there is obviously different from that before us.

However, *Lockridge, supra,* seems to indicate that intentional and severe conduct unrelated to legitimate union objectives may ensure "that the risk of conflict with the general, congressional policy favoring expert, centralized [NLRB] administration and remedial action is tolerably slight," and in such a situation "the sheer logic of the pre-

emption principle might otherwise cause it to be extended to a point where its operation might be unjust." 403 *U. S.* at 301, 91 S. Ct. at 1925. It further states that it "may be that a similar exception would arise where the Board affirmatively indicates that, in its view, pre-emption would not be appropriate." 403 *U. S.* at 298, n. 8, 91 S. Ct. at 1923.

Although in *Lockridge* the court was speaking in the context of hostile treatment of a union member by his union, what it stated might well be applicable in principle to plaintiff's role, not as his employer's representative in collective bargaining, but rather, if it may be separated therefrom, simply as a supervisor for this employers' association. In that setting his discharge as a supervisor by reason of the deliberate and malicious conduct alleged in the complaint not related to any possible legitimate union objective, if sustained, conceivably might warrant state court jurisdiction. Because he is a supervisor of the employer association and by reason of the nature of the conduct involved, the NLRB might affirmatively indicate that preemption here would not be appropriate, even though defendants claim that the time for filing an NLRB complaint has expired. In any event, his status only as a supervisor generally would preclude NLRB jurisdiction. See *Florida Power & Light Co. v. Int'l Bhd. of Elec. Workers, supra; NLRB v. Bell Aerospace Co.,* 416 *U. S.* 267, 94 *S. Ct.* 1757, 40 *L. Ed.* 2d 134 (1974).

In view of *Lockridge* we have concluded that the factual context of *Vaca* does not exhaust the area of state court jurisdiction covered by this last exception to the preemption doctrine. To the extent, therefore, that the complaint alleges malicious interference with plaintiff's employment solely as a supervisor for the employers' association unrelated to any possible legitimate union objective, we hold that it states a claim for relief over which the state court has jurisdiction. Obviously, the complaint in this respect needs refinement. We assume that discovery before trial and a pretrial conference will clarify this issue.

For the foregoing reasons the judgment is reversed and the matter is remanded for proceedings consistent with this opinion. We do not retain jurisdiction.