MATSON PLASTERING COMPANY,
INC., a California corporation,
Plaintiff–Appellant,

v.

PLASTERERS AND SHOPHANDS LO-
CAL NO. 66, OPERATIVE PLASTER-
ERS AND CEMENT MASONS INTER-
NATIONAL ASSOCIATION OF THE
U.S. AND CANADA, an unincorporated
association, Defendant–Appellee,

and

Contracting Plasterers Association of
Alameda County and Contra Costa
County, an unincorporated association,
et al., Defendants.

No. 87–2203.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1988.

Decided July 27, 1988.

Thomas E. Campagne and Brian C. Leighton, Fresno, Cal., for plaintiff-appellant.

John J. Davis, Jr., McCarthy, Johnson & Miller, San Francisco, Cal., for defendant-appellee.

Before GOODWIN, SCHROEDER and POOLE, Circuit Judges.

SCHROEDER, Circuit Judge:

Matson Plastering Company, Inc. ("Matson"), appeals the district court's grant of summary judgment to the Plasterers and Shophands Local No. 66 ("Union") 658 F.Supp. 1580. Matson brought this action under section 303 of the Labor Management Relations Act, 29 U.S.C. § 187, alleging it had been compelled to sign a collective bargaining agreement with the Union as a result of the Union's illegal secondary picketing. Matson sought rescission of the agreement as well as damages. We affirm the district court's judgment.

This case arises out of a construction site dispute between Matson and the Union. Matson is a plastering contractor in Northern California; its president is Kenneth Matson. The Union represents plasterers in Northern California.

In September 1985, Peoples Construction Company, Inc. ("PCCI"), a subcontractor for a construction project in Foster City, California, hired Matson as a plastering subsubcontractor for that project. PCCI's labor agreements required that it hire only union subcontractors, and the project was within Local 66's jurisdiction. However, Matson was operating non-union.

In October 1985, a spokesman for the Union approached Matson about signing a labor agreement; Matson refused. Matson alleges that the Union then threatened PCCI that it would "shut down the whole job" at the Foster City construction site unless Matson signed a collective bargaining agreement with the Union or was fired from the job. The Union denies this allegation.

For several days in late October, the Union picketed the construction site. Whether this was lawful organizational picketing or unlawful secondary picketing is also disputed. In any event, the picketing stopped when Matson agreed to sign a collective bargaining agreement with the Union. Matson signed a three-year agreement with the Union, and completed its work at the site under the terms of that agreement.

In March 1987, Matson sued the Union in district court, alleging that it was compelled to enter into a collective bargaining agreement as a result of the Union's illegal secondary picketing. Matson alleged that the Union's picketing was illegal secondary activity in violation of section 8(b)(4) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4), because it was intended to induce other contractors at the site to stop doing business with Matson. The Union maintained its activities were legal primary picketing under 29 U.S.C. § 157, not directed at neutral parties. Matson brought this

action under section 303 of the Labor Management Relations Act, 29 U.S.C. § 187, seeking rescission of the collective bargaining agreement, recovery of what it terms are "excess wages" paid under the agreement, and damages for alleged lost opportunities to bid on other projects.

In May 1987, the district court granted summary judgment to the Union on all claims. The court ruled that even assuming Matson's allegations of illegal secondary picketing were true, the remedies it sought were not available as a matter of law under section 303. Matson timely appeals pursuant to 28 U.S.C. § 1291. The issue is whether Matson has a claim justiciable in district court for the relief it seeks.

Matson contends it is entitled to rescission of the collective bargaining agreement under section 303 because it signed the agreement "under duress and/or as a result of unlawful picketing." Section 303 provides:

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States ... and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C. § 187. The unfair labor practices defined in section 158(b)(4) include threatening or coercing an employer for the purpose of forcing the employer to join a labor organization, or striking for the same purpose. 29 U.S.C. § 158(b)(4).

■ The problem with Matson's position is that it seeks equitable relief to undo the contract it signed, but section 303's remedies are limited to damages. Matson could have asked the National Labor Relations Board to enjoin the Union's allegedly illegal secondary picketing. See 29 U.S.C. § 160(j) (Board has power to petition district court for injunctive relief against unfair labor practice). However, Matson did not timely seek action from the Board. Instead, Matson brought this action under section 303, and asks us to declare its collective bargaining agreement invalid.

Section 303 authorizes only "actual, compensatory damages." *Local 20, Teamsters, Chauffeurs and Helpers Union v. Morton,* 377 U.S. 252, 260, 84 S.Ct. 1253, 1258, 12 L.Ed.2d 280 (1964). Thus, even if the Union's activity constituted illegal secondary picketing, the federal courts cannot grant the relief Matson seeks. Because section 303 clearly limits relief to damages, the district court properly rejected Matson's request for rescission.

■ Matson next contends it is entitled to the "excess wages" it paid its workers as compensatory damages under section 303. Specifically, Matson argues that, as a result of the Union's illegal secondary activity, it was forced to enter into a collective bargaining agreement with the Union, and that under the terms of that agreement, it paid its workers higher wages than it otherwise would have paid them. Matson concedes that no term or clause of the agreement is harsh or unconscionable. Matson argues, nonetheless, that because the agreement was procured by illegal secondary picketing, it is entitled to recover the "excess wages" it paid as damages under section 303.

No court has ever held that damages for such "excess wages" are recoverable under section 303. The types of damages courts have recognized as recoverable under section 303 include: sales lost during a union's illegal picketing, *Frito Lay, Inc. v. Local Union No. 137, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers,* 623 F.2d 1354, 1363 (9th Cir.), *cert. denied,* 449 U.S. 1013, 101 S.Ct. 571, 66 L.Ed.2d 472 (1980); the cost of extra guards hired as a result of picketing, *Flame Coal Co. v. United Mine Workers,* 303 F.2d 39, 46 (6th Cir.), *cert. denied,* 371 U.S. 891, 83 S.Ct. 186, 9 L.Ed. 2d 125 (1962); overtime pay necessary to resume normal plant operations at the end of the strike, *Mason–Rust v. Laborers' International Union, Local 42,* 435 F.2d 939, 947 (8th Cir.1970); travel expenses and

long-distance telephone calls incurred in attempting to end the strike, *Abbott v. Local 142, Journeymen & Apprentices of the Pipe Fitting Industry*, 429 F.2d 786, 790 (5th Cir.1970); and extra freight expenses, *Vulcan Materials Co. v. United Steelworkers*, 316 F.Supp. 509, 515 (N.D.Ala. 1969), *aff'd*, 430 F.2d 446 (5th Cir.1970), *cert. denied*, 401 U.S. 963, 91 S.Ct. 974, 28 L.Ed.2d 247 (1971).

The language of the statute, its legislative history, and judicial interpretation make clear that damages recoverable under section 303 include actual compensatory damages for out-of-pocket expenses paid to third parties as a result of the picketing, but do not include wages paid to employees pursuant to a contract. *See Morton*, 377 U.S. at 260, 84 S.Ct. at 1258. Other forms of relief are available by filing a complaint with the National Labor Relations Board, which has broad remedial powers. *See* 29 U.S.C. § 160. Matson seeks an order that would ignore the parties' written agreement as to wages and benefits. Matson is clearly not entitled to rescission under section 303; it cannot nullify the entire agreement by recasting its claim as one for damages.

■ Finally, Matson argues that under section 303 it is entitled to recover lost profits resulting from its lost opportunity to bid on subsequent contracts. However, it is an elementary principle of contract law that damages must be reasonably certain. *See Restatement (Second) of Contracts* § 352 (1981); *see also* 22 Am.Jur.2d *Damages* § 172 (1965) ("[n]o recovery can be had for loss of profits which are determined to be uncertain, contingent, conjectural, or speculative"). This case is not like *Frito Lay*, in which we found lost profits recoverable because we could ascertain the damages suffered with reasonable certainty. In *Frito Lay*, we awarded damages for sales lost due to a strike by comparing the sales volume in the division affected by the strike with two other divisions in the same state that promoted the same items at the same time and had approximately the same absolute sales volume figures for the four periods preceding the strike. 623 F.2d at 1364. We have never awarded damages for lost opportunities to bid on construction projects. The two courts that have considered the issue of lost profits resulting from the lost opportunity to bid on subsequent contracts have found proof of damages too speculative and uncertain. *Collier v. Hoisting and Portable Engineers, Local Union No. 101*, 761 F.2d 600 (10th Cir.1985); *Hyatt Chalet Motels, Inc. v. Salem Building and Construction Trades Council*, 298 F.Supp. 699 (D.Ore.1968).

Because Matson did not bid on these subsequent contracts, we hold that any damages resulting from its lost opportunities are not available under section 303. Hence, we find that each of Matson's contentions on appeal is without merit.

AFFIRMED.