OPINION OF THE COURT
Kenneth R. Fisher, J.
Plaintiff (Delta-Sonic) commenced this action seeking an order enjoining defendant (the Council) from distributing handbills outside of Delta-Sonic carwashes in the Rochester area. (See, Labor Law § 807 [governing the general availability of injunctive relief in labor disputes].) A temporary restraining order was issued by Administrative Supreme Court Justice Charles Willis enjoining the Council from distributing its handbills pending a preliminary injunction hearing. The Council thereafter removed Delta-Sonic’s action to Federal court on the ground that the complaint stated a cause of action under section 303 of the Labor Management Relations Act (LMRA; 61 Stat 136, as amended [formerly National Labor Relations Act (NLRA)]) (29 USC § 187).
Delta-Sonic moved for a remand to State court on the ground that a Federal question did not exist on the face of the complaint and, therefore, Federal court lacked jurisdiction. Delta-Sonic’s motion for a remand was granted in a decision of Chief Judge Michael A. Telesca. A statement of the facts appearing below is taken largely from Chief Judge Telesca’s decision.
*674 BACKGROUND
The Council represents the Operating Engineers, Carpenters, Bricklayers, Electricians, Plumbers, Painters and other construction unions, and has approximately 40,000 members. Convinced that Benderson Corporation (Benderson), the owner of Marine Midland Plaza, hired nonunion labor at substandard wages to renovate that building, the Council decided to initiate a protest against Benderson and petition it to hire only union labor for the renovation project.
Based upon its understanding that Benderson also owns Delta-Sonic carwashes, the Council planned to distribute handbills to carwash customers at Delta-Sonic locations in Rochester in an effort to gain sympathetic public reaction to its protest that nonunion labor was being used for Marine Midland Plaza renovations. The proposed handbills stated that Benderson owned Delta-Sonic and requested that consumers not patronize Delta-Sonic until Benderson hired union labor for the renovation. The Council’s handbilling campaign was scheduled to begin on July 28, 1995.
In an effort to preempt the Council’s protest, Delta-Sonic filed this action alleging that the Council’s handbill distribution campaign constituted tortious interference with its business because the information contained in the handbill was misleading and would injure Delta-Sonic’s business. Delta-Sonic is emphatic that it is not affiliated with Benderson and has no "unity of interest” with it and, therefore, it could not be considered a proper target of the Council’s protest.
After issuance of the TRO enjoining the Council from picketing, handbilling or protesting at Delta-Sonic locations pending a hearing, and removal to Federal court, Chief Judge Telesca granted Delta-Sonic’s remand motion, holding (1) that Delta-Sonic’s complaint alleges on its face only a New York State law cause of action for infringement of its property right to carry on unobstructed business activities (Barclay’s Ice Cream Co. v Local No. 757 of Ice Cream, Drivers & Empls. Union, 51 AD2d 516, 517 [1st Dept 1976], affd 41 NY2d 269 [1977], cert denied 436 US 925 [1978]; Harp Rest. Mgt. v Cromwell, 183 AD2d 423 [1st Dept 1992]), (2) that peaceful handbilling activity is not a prohibited labor practice under the NLRA and, therefore, the Council’s protest (which would not involve threats, coercion, or a restraining of Delta-Sonic customers) would not be actionable under LMRA § 8 (b) (4) (29 USC § 158 [b] [4]; DeBartolo Corp. v Florida Gulf Coast Trades Council, 485 US 568, 576-578 [1988]), (3) that the LMRA only permits *675 recovery of monetary damages, whereas Delta-Sonic sought only injunctive relief against the Council (29 USC § 187; Table Talk Pies v Strauss, 237 F Supp 514 [SD NY 1964]), and (4) that the Council’s separate contention that the State action is preempted by Federal labor law (see, San Diego Unions v Garmon, 359 US 236 [1959] [State court tort action preempted where labor activity is arguably protected or prohibited under Federal labor law]; Sears Roebuck & Co. v Carpenters, 436 US 180 [1978] [same]; Teamsters Union v Morton, 377 US 252 [1964] [preemption where labor activity is not expressly protected or prohibited by Federal labor law]) is only a defense to the State court action and therefore may not support removal to Federal court (Franchise Tax Bd. v Laborers Vacation Trust, 463 US 1, 14 [1983] ["a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiffs complaint, and even if both parties admit that the defense is the only question truly at issue in the case”]). In an observation relevant to the issues this court must now decide, Chief Judge Telesca stated that the preemption defense, and the Council’s defense to the State court action that injunctive relief against handbilling would violate its First Amendment rights, "can * * * be raised and determined in state court”.
Delta-Sonic moves in this court for a preliminary injunction. The Council responds that the mechanisms and procedures of the Labor Management Relations Act (29 USC §§ 141-187), not State law, should govern this dispute, and that a preliminary injunction would violate defendants’ rights to engage in free speech protected by the Federal and State Constitutions. The Council also contends that Supreme Court lacks jurisdiction to issue an injunction because of the anti-injunction statute (Labor Law § 807 [1]), and because Delta-Sonic cannot show irreparable harm or a likelihood of success on the merits. Finally, the Council contends that Delta-Sonic does not plead a valid cause of action. This court agrees with the preemption argument, and therefore does not reach the constitutional and other arguments presented in defense by the Council.
DISCUSSION
The Council’s position on preemption may be summed up as follows: Because consumer handbilling of secondary employers is not prohibited by section 8 (b) (4) of the LMRA (DeBartolo Corp. v Florida Gulf Coast & Trades Council, 485 US 568 [1988], *676 supra), it is arguably permitted under section 8 (b) (4) (ii) (B), and is also "arguably protected” under section 7 of the LMRA (29 USC § 157). When the labor activity at issue in the case is arguably permitted or arguably protected in such manner, the case is preempted to the LMRA scheme. (San Diego Unions v Garmon, 359 US 236 [1959], supra; Teamsters Union v Morton, 377 US 252 [1964], supra.) Delta-Sonic, on the other hand, contends that the Council’s proposed handbilling activity is not "arguably” subject to the LMRA, "either by way of protection or prohibition,” and that "it may [not] rationally be concluded that the conduct in question is activity conducted for the purpose and within the scope of recognized labor union objectives * * * [because instead] it is conduct outside that scope although engaged in by the members of a labor union.” (Barclay’s Ice Cream Co. v Local No. 757 of Ice Cream Drivers & Empls. Union, 41 NY2d 269, 272 [1977], supra.)
"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.” (San Diego Unions v Garmon, 359 US 236, 244 [1959], supra.) "At times it has not been clear whether the particular activity regulated by the States was governed by LMRA § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board.” (Supra, 359 US, at 244-245.)
Under the Garmon scheme, "[i]f the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the states are ousted of all jurisdiction.” (Supra, 359 US, at 245.) "Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States” (supra, 359 US, at 245), or is subject to a second doctrine of preemption.[1] But "[i]n the absence of the Board’s clear determination [subject to judicial review] that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such *677 activities are subject to state jurisdiction.” (Supra, 359 US, at 246; see also, Building & Constr. Trades Council v Associated Bldrs. & Contrs., 507 US 218, 225 [1993] ["Garmon pre-emption prohibits regulation even of activities that the NLRA only arguably protects or prohibits”]; Breininger v Sheet Metal Workers, 493 US 67, 74 [1989] ["as a general matter, neither state nor federal courts possess jurisdiction over claims based on activity that is 'arguably’ subject to §§ 7 or 8 of the NLRA”].)
Delta-Sonic’s argument, that the Council’s proposed activity is clearly outside both section 7 and section 8, and that therefore there is nothing to defer to the National Labor Relations Board (NLRB), is premised on the twin view that the Council’s proposed handbilling is not a prohibited labor practice under the NLRA (DeBartolo Corp. v Florida Gulf Coast Trades Council, 485 US 568, 576-578 [1988], supra), and that the handbilling is concomitantly not a protected labor activity either. (DeBartolo Corp. v National Labor Relations Bd., 463 US 147 [1983].) The first stated premise is correct, but Delta-Sonic is in error on the second premise. Even if Delta-Sonic was correct in regard to the second premise, however, analysis would turn to a second preemption doctrine noted above, the so-called Machinists preemption, named after the case of Machinists v Wisconsin Empl. Relations Commn. (427 US 132 [1976], supra) and Teamsters Union v Morton (377 US 252 [1964], supra), the doctrinal origins and rationale of which is largely ignored by Delta-Sonic. The court treats Delta-Sonic’s argument under Garmon preemption principles first, and then turns to whether, even if Delta-Sonic was right that it is settled that section 7 does not cover the Council’s proposed handbilling, Machinists preemption would nevertheless preclude this action.
The Supreme Court has not decided that peaceable handbilling is unprotected under section 7 of the Act. Rather, in the case relied on by Delta-Sonic, it decided only that handbilling directed at a secondary entity not in a producer-distributor relationship with the object of the primary labor dispute is activity outside the "publicity proviso” of section 8 (b) (4). (DeBartolo Corp. v National Labor Relations Bd., 463 US, at 153-154, 155-156, supra.) Neither DeBartolo case considered whether peaceable handbilling directed to a secondary employer is protected under section 7 of the Act. Contrary to Delta-Sonic’s argument, that issue is quite independent of the producer-distributor criterion triggering the publicity proviso of section 8 (b) (4). Delta-Sonic cites no other case in support of its argu *678 ment that it has been definitively decided that handbilling in these circumstances is not protected under section 7 of the Act. Thus, we are left with the Council’s assertion that DeBartolo’s holding concerning handbilling of secondary employers leads to the certain conclusion that such activity is "arguably protected” under section 7 of the LMRA.[2]
Whether the Council’s urged syllogism has merit is precisely the sort of question Garmon (supra) directs courts to defer to the NLRB. The Council contends that peaceable handbilling of a secondary employer’s potential consumers is protected by section 7, which allows employees to "engage in concerted * * * activities for the purpose of* * * mutual aid and protection.” (29 USC § 157.) If the Council is correct, Delta-Sonic’s proposed injunction would involve a State regulation of conduct protected by the NLRA. But the Garmon rule is "that '[i]f the state law regulates conduct that is actually protected by federal law * * * pre-emption follows * * * as a matter of substantive right.’ ” (Golden State Tr. Corp. v Los Angeles, 493 US 103, 110 [1989] [quoting Brown v Hotel Empls., 468 US 491, 503 (1984), supra].) "The NLRA * * * creates rights in labor and management both against one another and against the State.” (Supra, 493 US, at 109.) Whether peaceable handbilling of a secondary employer, which is not prohibited by section 8 (b) (4), is also protected because it comes within section 7’s "for the purpose of * * * mutual aid and protection” ambit, or whether indeed that language in section 7 was intended to embrace particular *679 types and kinds of activities in a specific sense, are matters to "be left in the first instance to the National Labor Relations Board” unless they are the subject of "compelling precedent applied to essentially undisputed facts.” (San Diego Unions v Garmon, 359 US, at 244-245, 246, supra.) No such compelling precedent has been called to the court’s attention.
Even if it was definitively decided that the Council’s proposed activity is not "protected” under section 7, though clearly not prohibited under section 8, a second preemption doctrine, the so-called Machinists doctrine, is invoked by the peaceable nature of the Council’s proposed handbilling activity, as noted above. "The rights protected against state interference * * * are not limited to those explicitly set forth in § 7 as protected against private interference.” (Golden State Tr. Corp. v Los Angeles, 493 US, at 110, supra.) Thus, the Machinists doctrine "pre-empt[s] state law and state causes of action concerning conduct that Congress intended to be unregulated.” (Metropolitan Life Ins. Co. v Massachusetts, 471 US 724, 749 [1985].) It concerns "activity that was neither arguably protected against employer interference by sections 7 and 8 (a) (1) of the NLRA, nor arguably prohibited as an unfair labor practice by section 8 (b) of that Act.” (471 US, at 749, supra [quoted in Lingle v Norge Div. of Magic Chef, 486 US 399, 409, n 8 [1988].) Under this separate preemption rule, it is recognized "that certain types of peaceful conduct 'must be free of regulation.’ ” (Golden State Tr. Corp. v Los Angeles, 493 US, at 111, supra [quoting Machinists v Wisconsin Empl. Relations Commn., 427 US, at 155, supra].) The Machinists rule "denies either sovereign the authority to abridge a personal liberty,” and recognizes "the interest in being free of governmental regulation of the 'peaceful methods of putting economic pressure upon one another’ * * * [as a] right specifically conferred on employers and employees by the NLRA.” (493 US, at 112, supra [quoting Machinists v Wisconsin Empl. Relations Commn., 427 US, at 154, supra].)
In Teamsters Union v Morton (377 US 252 [1964]), relied on by the Council and a preemption case following the Machinists formula developed subsequently, the Supreme Court "struck down an Ohio labor law that prohibited a type of secondary boycott neither prohibited nor protected under the NLRA.” (Metropolitan Life Ins. Co. v Massachusetts, 471 US, at 750, supra.) The Court found it necessary to determine, "even though it may be assumed that at least some of the secondary activity here involved was neither protected nor prohibited”, *680 whether Congress foreclosed the field concerning regulation of such conduct by enactment of the NLRA. (Teamsters Union v Morton, 377 US, at 258, supra.) The Court determined that, with respect to the peaceful secondary employer activity at issue in Morton, "[allowing its use is part of the balance struck by Congress between the conflicting interests of the union, the employees, the employer and the community.” (Supra, 377 US, at 259.) In the Machinists case itself, the Court made clear that its prior view, "that state power is not pre-empted as to peaceful conduct neither protected by section 7 nor prohibited by section 8 of the federal Act” was in error. (Machinists v Wisconsin Empl. Relations Commn., 427 US, at 141, supra.) This followed because "a particular activity might be 'protected’ by federal law not only when it fell within § 7, but also when it was an activity that Congress intended to be 'unrestricted by any governmental power to regulate’ because it was among the permissible 'economic weapons in reserve * * * actual exercise [of which] on occasion by the parties’ ” is part of the balance Congress intended to put in place. (Machinists v Wisconsin Empl. Relations Commn., 427 US, at 141, supra [emphasis in original].)
Delta-Sonic seeks to avoid each of these alternative resolutions of this case by interposing two arguments. First, Delta-Sonic protests that the secondary employer activity upheld in Morton (supra) involved customers and suppliers of the employer with whom the union had its primary dispute. The peaceful persuasion was directed at reducing the customers’ and suppliers’ business with the primary employer, not at reducing the customers’ and suppliers’ business with the outside world. Delta-Sonic suggests that a ruling of this court permitting the peaceful handbilling proposed by the Council here would be unprecedented, and would permit unions to select employers as union targets for consumer boycotts on the basis of their economic importance to the community, the ability of such a boycott to garner press coverage, or other factors wholly unrelated to the targeted company’s involvement in the union’s dispute.
Whether Delta-Sonic is indeed intimately connected in an economic sense to Benderson Development by virtue of the Benderson children’s activities in both corporations is the subject of substantial dispute. But there is more than wholly speculative evidence, some of it uncontroverted, that common management personnel composed of Benderson family members exists as between Delta-Sonic and Benderson Develop *681 ment. (Cf., Park Terrace Caterers v McDonough, 9 AD2d 113, 114 [1st Dept 1959] ["The existence or nonexistence of such a unity of interest is not dependent upon whether nonunion goods rather than nonunion services are involved, or upon whether a formal contractual relationship subsists between the parties picketed and those in contention with the union, or whether such parties are in the same business”]; Bergen Bindery v Local 1 Amalgamated Lithographers, 79 LRRM [BNA] 2776, 68 Lab Cas 52,778 [Sup Ct, NY County, Jan. 3, 1972] [1972 WL 16609] [and cases cited therein].) But the Garmon and Machinists preemption doctrines, and the Morton holding in regard to secondary employer activity in particular, do not depend upon any unity of interest analysis. In regard to Garmon, the question for this case is only whether the activity proposed by the Council is arguably protected by section 7. In regard to Machinists, the question is whether, if the proposed conduct is not prohibited by section 8, and not protected by section 7, it is otherwise intended by Congress to be left unregulated by either sovereign. The unity of interest analysis proffered by Delta-Sonic is not properly a part of either determination.
Related to the first objection is Delta-Sonic’s second objection, that the Council’s proposed activity in regard to secondary employer handbilling concerns conduct outside the NLRA preclusion because it "involve[s] 'conduct touching] interests so deeply rooted in local feeling and responsibility that * * * we could not infer that Congress had deprived the states of the power to act.’ ” (Machinists v Wisconsin Empl. Relations Commn., 427 US, at 136 [quoting San Diego Unions v Garmon, 359 US, at 244], supra.) But the Council’s proposed handbilling is peaceable in nature, involving no element of violence, forceful intimidation, or coercion which might properly be of concern to the States. (427 US, at 136-137, nn 2-3, supra; New York Tel. Co. v New York Labor Dept., 440 US 519, 539-540, n 33 [1979].) Nor does the Council’s proposed handbilling involve, after revisions were made to meet the objections of plaintiff, any measure of malicious defamation cognizable in a labor dispute under State law. (Wolf St. Supermarkets v McPartland, 108 AD2d 25, 31-32 [4th Dept 1985].) Finally, it cannot be said that the proposed handbilling is only of "peripheral concern” to the NLRA scheme. (San Diego Unions v Garmon, 359 US, at 243, supra.) Conduct not prohibited by section 8, and either arguably protected by section 7 or intended to be left unregulated by either sovereign, necessarily is of substantial concern *682 to the NLRA scheme.[3] Accordingly, there is merit to the Council’s contention that these two exceptions to preemption are not invoked when peaceful union activity is proposed. (See, Teamsters Union v Morton, 377 US, at 257, supra [contrasting "cases involving union violence” where the States’ paramount interest in preserving domestic tranquility "has been permitted to prevail by reason of controlling considerations which are entirely absent in the present case”]; Wolf St. Supermarkets v McPartland, 108 AD2d 25, 30 [4th Dept 1985], supra ["Absent proof of more than isolated or sporadic incidents of violence or of damages proximately linked to specific conduct, claims for tortious interference with contractual relations have been repeatedly dismissed as preempted”]; at 31-32 ["Defamation is merely a peripheral concern of the Federal labor laws provided the State remedy is limited 'to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage’ ”, quoting Linn v Plant Guard Workers, 383 US 53, 65 (1966)].)
In summary, whether considered under Garmon preemption principles or Machinists preemption principles, the motion for a preliminary injunction must be denied, and the complaint, at least insofar as it seeks injunctive relief, is dismissed. Under the former theory, dismissal preserves to the NLRB primary jurisdiction to determine the question whether the Council’s proposed conduct is protected under section 7. Under the latter theory, which presupposes (but does not pretermit) that the Board will find the conduct not protected, it is the court’s finding that the Council’s proposed conduct was intended to be left unregulated by the congressional scheme.
*683 [The portion of this opinion observing that it is doubtful that the New York law of prima facie tort in this business context reaches nonpicketing handbill activity on public property which is arguably protected by First Amendment, following the rationale of DeBartolo Corp. v Florida Gulf Coast Trades Council (485 US, at 576, supra) has been deleted for publication.]
CONCLUSION
The motion for a preliminary injunction is denied.

. See, Machinists v Wisconsin Empl. Relations Commn., 427 US 132 (1976) (discussed below).

. The Council’s further point, deleted in the quotation above, that it is also a certain conclusion that such activity is "arguably permitted” under section 8 (b) (4), is without merit and cannot provide a predicate for preemption. If authoritative precedent establishes that an activity is not prohibited by section 8, it is surely permitted in any functional sense. It is not fair to characterize the question, at least under section 8 (b) (4), as "arguable” and thereby seek preemption to safeguard the primary jurisdiction of the NLRB under Garmon (supra). On the distinction between preemption based on the primary jurisdiction of the NLRB and preemption based on actual protection of conduct as a matter of Federal substantive right (see, Brown v Hotel Empls., 468 US 491, 502-503 [1984]). DeBartolo (supra) is, on the section 8 (b) (4) question, assuredly "compelling precedent” under the Garmon formula if "applied to essentially undisputed facts” as is the case here. (San Diego Unions v Garmon, 359 US, at 246, supra.) Accordingly, insofar as section 8 (b) (4) touches the Council’s proposed handbilling, there is no question to defer to the primary jurisdiction of the Board. Jurisdiction is preempted on the section 8 (b) (4) question only if the activity is prohibited or arguably prohibited, not if it is clearly permitted by authoritative precedent. Unless arguably protected under section 7 of the Act, it is appropriate for the courts to "thereby raise the question whether such activity may be regulated by the States” (San Diego Unions v Garmon, 359 US, at 245, supra) or may be subject to the Machinists preemption doctrine discussed in the text below.

. By contrast, the State’s interest in regulating peaceful and relatively unobtrusive handbilling activity directed to secondary employers is not readily apparent. While Machinists preemption "does not involve in the first instance a balancing of state and federal interests * * * [a]n appreciation of the State’s interest in regulating a certain kind of conduct may still be relevant in determining whether Congress in fact intended the conduct to be unregulated.” (Metropolitan Life Ins. Co. v Massachusetts, 471 US, at 749, n 27, supra.) Delta-Sonic simply provides no compelling State interest rationale for local regulation of peaceable handbilling activity on public property outside a business premise. If picketing were involved, even peaceful picketing, there might be some State interest found in the New York cases by virtue of the secondary employer nature of the activity. (Goldfinger v Feintuch, 276 NY 281 [1937].) But the Council’s proposed activity here does not involve picketing, and instead may be characterized as "nonpicketing labor publicity” by mere handbilling. (DeBartolo Corp. v Florida Gulf Coast Trades Council, 485 US, at 584, supra.) Moreover, as set forth below, finding that the State has no such interest in these circumstances avoids the troublesome constitutional issues a contrary holding would present.